AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 MAY 23 AM 9:43
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 3:18mj387
Simply Self Storage, 7888 Wildcat Road, Huber Heights, )
Ohio, Unit 501 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

located in the ____Southern____ District of ____Ohio____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 846 | conspiracy to possess with intent to distribute controlled substances |

The application is based on these facts:

Attached Affidavit of Steve Lucas

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Steve Lucas, SA of the DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 5-23-18

_____
Judge's signature

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
Printed name and title

# AFFIDAVIT

Steven M. Lucas, a Special Agent (S/A) of the Drug Enforcement Administration (DEA), United States Department of Justice ("hereinafter referred to as the Affiant"), being duly sworn, deposes as follows:

## INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Affiant is a law enforcement officer and has been employed by the DEA since June 2005, and is assigned to the Dayton Resident Office. Prior to becoming a special agent, Affiant was a police officer with the Schererville Police Department between 1995 and 2005. During that time, Affiant was assigned to the DEA HIDTA group in Merrillville, Indiana for approximately 4 years. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived there from. Through training and experience, affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source and location of proceeds of illegal activity, commonly referred to as money laundering.

Affiant has participated in several Title-III wire tap investigations and is familiar with how local drug traffickers and high level traffickers conduct transactions.

3. This affidavit is made in support search warrants for the following locations as there is probable cause to believe that evidence, fruits, contrabands and instrumentalities of the following crimes – namely, 21 USC s. 841(a)(1) (possession with intent to distribute controlled substances) and 21 USC s. 846 (conspiracy to possess with intent to distribute controlled substances) – can be found there:

- 8786 Mardi-Gras Drive Dayton, Ohio 45424 (hereinafter, the Target Residence), including any garages, storage lockers, or out buildings at this location. The Target Residence is more fully described in Attachment A-1, and Attachment A-1 is incorporated herein by reference.

- Simply Self Storage, 7888 Wildcat Road, Huber Heights, Ohio, Unit 501. This location is more fully described in Attachment A-2, and Attachment A-2 is incorporated herein by reference.

4. Affiant is participating in an investigation conducted by agents of the DEA and other agencies, into the cocaine and heroin distribution activities of individuals in the Dayton, Ohio area and elsewhere. Heroin is a Schedule I controlled substances and Cocaine is a schedule II controlled substance. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

   A. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

   B. Information developed from cooperating sources and defendant witnesses;

   C. Public records,

This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the request of a search warrant for the location (further referred to as "Target Residence").

## FACTS SUPPORTING PROBABLE CAUSE

5. Affiant has been involved in an investigation of heroin and cocaine distributors in Dayton, Ohio. In March 2018, Affiant was contacted by an Agent from the DEA Dallas Division Officer that a confidential source was providing them information about target(s) in Dayton, Ohio and specifically about the Target Residence.

6. The Confidential Source referred to in this affidavit as CS#1, provided detailed information that has been corroborated by investigators though other sources, public databases and physical surveillance. CS#1 stated he/she was involved with a Mexican based drug trafficking organization with ties to Dallas and Dayton, Ohio. CS#1 stated he/she worked in the capacity of a courier for the organization. CS#1 stated that, in January 2018, he/she was present in Dayton, Ohio during the delivery of 6 bundles believed to be kilograms of cocaine to two subjects at the Target Residence. CS#1 later identified a photo of Craig SUMERLIN as the main subject who took receipt of the cocaine. CS#1 stated he/she also collected suspected drug proceeds from SUMERLIN and transported them to other members of the organization.

7. CS#1 stated in February 2018, he/she made a second trip to Dayton, Ohio and specifically met with SUMERLIN again at the Target Residence. CS#1 stated this time he/she collected approximately $48,000 in drug proceeds from SUMERLIN and was stopped during the trip back to Dallas and the money was seized. Affiant was able to confirm the stop and seizure of the currency took place in Tennessee on February 8, 2018. CS#1 told investigators SUMERLIN indicated he was going to move his family from the residence soon, but maintain the home for the purpose of storing drugs outside

the city of Dayton.

8. Affiant was able via an administrative subpoena to learn the utilities were in the name of Ashley Hoskins. Affiant was able to meet with a Confidential Source in Dayton, referred to as CS#2. CS#2 has provided information in multiple investigations that has led to the seizure of fentanyl, heroin and methamphetamine and multiple arrest. CS#2 stated Hoskins is the known girlfriend of SUMERLIN and likely would put utilities in name to help him avoid law enforcement detection as SUMERLIN is on Federal Supervised release at this time.

9. CS#2 stated he/she knows SUMERLIN to sell cocaine in the city of Dayton, Ohio and was told SUMERLIN was selling cocaine in March 2018. CS#2 stated he/she believed SUMERLIN has a Mexican source of supply for drugs.

10. Affiant is aware of an interview conducted with a cooperating defendant that occurred in May 2018. The cooperating defendant referred to in this affidavit as ("CD") told investigators about several drug traffickers and the information was able to be corroborated. CD stated he/she has had a drug history with SUMERLIN and was aware in January and February of 2018, SUMERLIN was obtaining kilograms of cocaine from a source in Dallas, TX. CD stated he/she did not know if SUMERLIN was still getting drugs from the source as CD has been incarcerated since the end of February 2018. This information is consistent with CS#1 who stated he/she delivered cocaine to SUMERLIN at the Target Residence in January and February 2018 and the source was based in Dallas, TX.

11. Throughout March, April and May 2018, Affiant and others routinely checked the Target Residence and saw no activity. However, Utilities remained in the name of Hoskins and the house appeared to have people come and go. Affiant noticed the grass cut and different lights on at times, however never observed any trash cans at the curbside on trash day.

12. On May 10, 2018, while checking the residence Affiant observed SUMERLIN in the driveway in a Dodge truck that was found to be rented loading it with what appeared

to be kids toys and other house hold goods. Affiant also observed a Nissan registered to SUMERLIN in the street in the front of the Target Residence. Affiant observed SUMERLIN and a female depart in tandem with SUMERLIN driving the rental truck with household goods.

13. Affiant knows SUMERLIN to have a criminal history to include a most recent conviction for conspiracy to distribute heroin in which he was convicted and served a ten year sentence and is currently still on Federal Supervised release.

14. Affiant contacted Federal Supervised release and learned SUMERLIN give a different current residence that he resides in at this time and not the Target Residence. Affiant knows it is common for people on probation to not give the address of secondary houses or stash/drug houses. Further, SUMERLIN told CS#1 that he was getting a second house and keeping the Target Residence as a stash location for drugs.

15. In May 2018, Affiant learned the source of supply was planning to send a shipment of cocaine to Dayton, Ohio and presumable SUMERLIN.

16. In Conclusion, Affiant believes SUMERLIN is involved with the distribution of cocaine and heroin in Dayton, Ohio. Affiant believes the Target Residence is a location to store drugs, ledger, currency and other items involved with drug trafficking and was placed in the name of SUMERLIN'S girlfriend in an effort to thwart law enforcement. Further, SUMERLIN give a different address to Federal Parole. As outlined in this affidavit houses are used to store drugs, prepare drugs for distribution, hide assets and firearms, and contain other evidence of ongoing drug trafficking.

17. On or about May 23, 2018, OSP stopped a rental car of which SUMERLIN was the driver and Ashely Hoskins was the passenger. The stop – which was for, among other things, speeding -- occurred in Jackson County, Ohio. During the stop, SUMERLIN and Hoskins gave conflicting stories concerning where they were headed. Based on this and other facts, OSP ran a trained, certified drug dog around the vehicle, and it alerted to the odor of narcotics. During the ensuing probable cause search of the

vehicle, OSP found a small amount of marijuana in Hoskins' lap as well as approximately $12,000 in cash. ($7500 was recovered from SUMERLIN while the remainder was hidden on various parts of Hoskins' body). SUMERLIN had a cellphone with him and indicated that he wanted to contact his parole officer to advise her of the stop. (As noted above, SUMERLIN is on federal probation for drug trafficking). While seated in an OSP cruiser, SUMERLIN made a phone call. Soon thereafter, OSP reviewed the audio from the cruiser during the call. From that review, SUMERLIN advised an unknown person to go clear out the house and take care of the storage unit. Based on my training and experience, I believe that SUMERLIN was directing another person to remove contraband – likely firearms or drugs – that he had hidden at a storage locker or the Target Residence.

18. Notably, during the search of the rental car, OSP discovered a receipt for Unit 501 at Simply Self Storage, 7888 Wildcat Road, Huber Heights, Ohio. The rental had just began today in SUMERLIN's name. SUMERLIN advised OSP that he did not have keys to the unit. However, OSP recovered a set of keys under the driver's seat which appear to be linked to the storage facility. Given the presence of this rental agreement, the keys, SUMERLIN's false denial of ownership of the unit, and his call, I believe that there is probable cause to believe that illegal drugs, the proceeds thereof, firearms or other contraband will be found at this location.

19. Additionally, OSP advised SUMERLIN of his Miranda rights. He waived those rights and indicated that officers would find methamphetamine and heroin in the storage unit.

20. A federal officer contacted SUMERLIN's probation officer. The probation officer advised that SUMERLIN had not contacted her today concerning the traffic stop.

21. Affiant knows from his training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes,

ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

22.     It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

23.     Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, U.S.C. Sections 5324) by obtaining several cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, the purchase of which generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money gained through engaging in narcotics activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

24.     Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts

by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

25. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

26. Affiant is aware, based on his training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

27. Based upon the information contained in this affidavit, affiant believes that there is probable cause to issue the above described warrants.

_____
Steven M Lucas, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on, May 23rd, 2018

_____
Honorable Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A-1

8786 Mardi-Gras Drive Dayton, Ohio 45424 (hereinafter, the Target Residence), including any garages, storage lockers, or out buildings at this location. The Target Residence is depicted below:



## ATTACHMENT A-2

Simply Self Storage, 7888 Wildcat Road, Huber Heights, Ohio, Unit 501. The storage locker is depicted below:



## ATTACHMENT B

I submit that there is probable cause to search for the following items:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios.

F. United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises, and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, vehicle registrations and documentation regarding storage units/lockers.

I. Illegal drugs, including, but not limited to cocaine, heroin and other controlled substances, and other tools used in the drug trade, including, but not limited to, scales, vacuum sealers, packaging material, presses, razor blades and cutting agents.

J. Firearms and ammunition.

K. Any computers, cellular telephones, tablets or electronic devices that may contain the above-described documents or items in electronic format.

L. Text messages, instant messages and the like that concern or relate to drug trafficking activity, including, but not limited to, sale prices, drug quantities, customers, sources of supply, or storage locations,